IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CLARA S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:24-cv-00577-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Clara S. seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on September 17, 2021, alleging a disability onset date of June 6, 2014. Tr. 199. The Commissioner denied plaintiff's claim on March 17, 2022, and again upon reconsideration on May 11, 2022. Tr. 75, 92. Plaintiff

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

filed a written request for a hearing, and a hearing was held before Administrative Law Judge ("ALJ") Richard Geib on August 22, 2023. Tr. 15. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–27. The Appeals Council denied plaintiff's request for review on February 16, 2023. Tr. 1–3. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for the Commissioner's when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

//

//

2 – OPINION AND ORDER

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 6, 2014, through her date last insured of September 30, 2016. Tr. 17. At step two, the ALJ found plaintiff had the following severe, medically determinable impairments: Ehlers-Danlos syndrome ("EDS"), postural orthostatic tachycardia syndrome, a shoulder condition, sinusitis, endometriosis, and fibromyalgia syndrome. *Id.* At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She could occasionally reach overhead bilaterally. She could frequently reach in other directions bilaterally. She must avoid even moderate exposure to work hazards, such as dangerous moving machinery and unprotected heights.

Tr. 18–19.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 25. At step five, the ALJ found—considering plaintiff's age, education, work experience, and RFC—jobs exist in

3 – OPINION AND ORDER

significant numbers in the national economy that plaintiff can perform, including marker, housekeeping cleaner, and small products assembler. Tr. 25–26. Thus, the ALJ concluded plaintiff was not disabled at any time from June 6, 2014, through the date last insured, September 30, 2016. Tr. 27.

## DISCUSSION

Plaintiff claims the ALJ (1) erred in discounting her subjective symptom testimony and (2) did not properly evaluate the medical opinion of Alena Guggenheim, N.D. Pl. Br. 9–30, ECF 13.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.

4 – OPINION AND ORDER

*See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At her hearing on Augst 22, 2023, plaintiff testified she had been unable to work due to rotator cuff and labrum tears on both shoulders, herniated lumbar disc, EDS, postural orthostatic tachycardia syndrome, pain, and fatigue. Tr. 40–41. Plaintiff claimed she was consistently in pain and limited in her movements and activities at work as a pre-school teacher due to her impairments. Tr. 42–43. For example, plaintiff stated she could not cut things without her hands cramping, she would sometimes get stuck in a squat, and her pelvis and shoulders would partially dislocate. *Id.* Plaintiff testified she had not yet been diagnosed with EDS but was partially diagnosed with hypermobility joint syndrome and attended physical therapy two or three times a week to try to improve her symptoms. She explained that while she enjoyed some improvement from physical therapy, her job made it impossible for her to rest, and therefore her conditions worsened. *Id.* Plaintiff attempted to manage her symptoms by creating lesson plans around her physical abilities but was unable to continue working due to "injuring [herself] every single day or every other day at this job." Tr. 43–44.

When asked where she experiences pain the most, plaintiff responded that her shoulders "are very bad" and her whole pelvis and lower back area are "extremely painful, especially if

5 – OPINION AND ORDER

[she's] in certain positions like sitting or standing for any length of time." Tr. 45–46. She further testified her thumbs will cramp up if she does any type of repetitive hand motion, her jaw is malformed and malaligned from EDS and will hurt if she chews too long, and her herniated disc and bulging disc in the back of her neck "kind of affect everything" and cause pain all over. *Id.*

Regarding her shoulders, plaintiff testified her right shoulder has a full rotator tear and partial labral tear, while her left shoulder has a full labral tear and partial rotator cuff tear. Tr. 45. Plaintiff stated she cannot lift her shoulders or arms above her head without them getting stuck, and her arms will tingle or partially dislocate if she reaches forward. *Id.* Plaintiff cannot lift more than five pounds on a good day and nothing on a bad day. *Id.* To address her symptoms, plaintiff receives lidocaine injections and does physical therapy for her shoulders. *Id.*

With respect to activities of daily living, plaintiff had difficulty walking and could walk a quarter mile on an average day, at most about a mile if fully rested, and not at all on a bad day when her pelvic joint was partially dislocated. Tr. 47. Furthermore, plaintiff would need to stop and rest after walking for ten minutes. *Id.* Following the birth of her son in February 2016, plaintiff's symptoms were exacerbated, and she was on "severe bedrest." Tr. 47–48. Plaintiff needed assistance with showering, washing her hair, and moving her son. Tr. 48. Plaintiff's parents helped her every day by babysitting, doing dishes, yard work, and anything else plaintiff needed. Tr. 50.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*.

6 – OPINION AND ORDER

A.      **Objective Medical Evidence**

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7–8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Here, the ALJ cited to progress notes from March 20, May 8, and August 6, 2015, to illustrate inconsistencies between plaintiff's medical record and subjective symptom testimony. Tr. 23, 224, 1418, 1457, 1459, 1996. However, these inconsistencies are either mischaracterized, out of context, or misunderstood. Tr. 23. Therefore, this was not a clear and convincing reason to reject plaintiff's symptom testimony.[2]

First, the ALJ addressed the March 20, 2015 note in which plaintiff reported to her provider that she had walked 3.5 miles to a wildlife area and back. Tr. 23, 1418. The ALJ then contrasted this long walk with plaintiff's "allegation that she cannot walk the length of her own driveway." Tr. 23 (citing Tr. 224). This was a mischaracterization of plaintiff's statement,

---

[2] An ALJ may not single out (cherry-pick) isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as inconsistent with the medical record as a whole. *Garrison*, 759 F.3d at 1017–18.

7 – OPINION AND ORDER

because in the function report, plaintiff did not state "she cannot walk the length of her own driveway," but rather her husband will get the mail for her "on days when [she] cannot walk down the driveway." Tr. 23, 224. Because plaintiff did not say she cannot ever walk down her driveway, there is no inconsistency with her walking 3.5 miles on one occasion. Furthermore, plaintiff reported she was exhausted the rest of the day following the 3.5 mile walk, and she had 5 out of 10 pain in her trapezius and neck and 4 out of 10 pain in her ankles the day after. Tr. 1418.

Second, the ALJ highlighted a progress note from May 8, 2015, in which plaintiff reported "everything feels better after recovering from beach w/ lots of walking" as inconsistent with plaintiff's symptom testimony. Tr. 23 (quoting Tr. 1457). This note is taken out of context, because, just three days before, plaintiff reported to the same physical therapist "everything feels much worse after [I] went to the beach w/ lots of walking." Tr. 1460. Plaintiff's statement of "feeling better" is more reasonably understood to refer to plaintiff's complaints to her same provider three days earlier, rather than her condition generally.

Third, the ALJ noted plaintiff's statement to a provider in August 6, 2015, that she "is not currently working in anticipation of staying home for child care" conflicted with her allegation she stopped working because of her conditions. Tr. 23, 1996. Plaintiff was pregnant at the time she made that statement; therefore, her statement that she was not working in anticipation of staying home for child care does not contradict her central claim of being unable to work due to her conditions. Importantly, plaintiff was not pregnant when she stopped working, and plaintiff made this statement while consulting a specialist to address her history of joint pain, fatigue, and partial dislocations a year after she stopped working. Tr. 1995–98.

8 – OPINION AND ORDER

Thus, it was unreasonable for the ALJ to discount plaintiff's symptom testimony based on the inconsistencies relied upon.

### B.  Improvement with Treatment

The ALJ also discredited plaintiff's symptoms because plaintiff "engaged in consistent physical therapy with overall improvement." Tr. 23. The ALJ first cited to plaintiff noticing an improvement "in her abdominal pain and soreness as well as decreased neck stiffness" after beginning physical therapy for her shoulder in November 2014. Tr. 21, 739. At the same appointment however, plaintiff reported she was "still limited in how much activity she can do due to her fatigue levels" and still experienced severe pain—8/10—after activities such as household chores and prolonged walking, sitting, or standing. Tr. 739. The ALJ next referred to physical therapy records from January 7th, 2015, wherein plaintiff reported "exercising three times a week and . . . an improvement in leg strength, with less pain in her low back and abdominals." Tr. 21, 747. At this appointment, plaintiff also reported "she continues to experience [bilateral] anterior shoulder pain intermittently with aggravating activities including carrying or lifting heavy objects. (> 5lbs)" and "is limited to standing < 40 minutes before increasing hip pain/low back pain." Tr. 747. Additionally, plaintiff reported she was limited to walking less than twenty minutes before experiencing increased hip pain. *Id.* The ALJ then cited to records from a therapy appointment on January 9, 2015, Tr. 22, at which plaintiff reported improvement to her shoulder pain after the last physical therapy session but was still limited to standing less than forty minutes and walking less than twenty minutes before experiencing increased hip pain. Tr. 753.

The ALJ's analysis demonstrated plaintiff enjoyed some improvement to her symptoms, but his analysis does not support a finding of "overall improvement" due to the limitations she

still endured. Tr. 23; *see* SSR 16-3p ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.") (citing 20 C.F.R. § 404.1529(c)).[3]

### C. Pregnancy and Uncomplicated Delivery

Lastly, the ALJ proffered plaintiff's pregnancy and uncomplicated delivery of her son as "evidence of record" inconsistent with plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms. Tr. 23. This was not a clear and convincing reason to discount plaintiff's testimony because the ALJ did not indicate what about plaintiff's symptom testimony related to her pregnancy or how, and plaintiff is allowed to attempt to live a normal life while disabled. Plaintiff's testimony related to her pains, inability to stand or walk for long periods of time, hand cramps, and other symptoms caused by her EDS; plaintiff never testified to issues related to pregnancy. Tr. 40–48. To the contrary, plaintiff testified her symptoms worsened during and after pregnancy and she suffered severe bedrest as a result. Tr. 47–48. Plaintiff's continued joint pain post pregnancy is documented in the medical record. Tr. 3538, 3545, 2197–98.

Finally, "claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Because plaintiff's disability claim was unrelated

---

[3] In the alternative, had plaintiff not sought consistent physical therapy during the relevant dates, her lack of effort to control her impairments would indicate "conservative treatment" and undermine the credibility of her testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2009) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (citation omitted).

10 – OPINION AND ORDER

to fertility and she stopped working over a year before giving birth, plaintiff's ability to have a child was irrelevant to the credibility of her testimony. *Mako B. v. Comm'r of Soc. Sec.*, No. 2:18-CV-01458-TLF, 2019 WL 4594599, at *5 (W.D. Wash. Sept. 20, 2019) ("It would be unfair for the Commissioner or a reviewing court to penalize a person of child-bearing age who applies for Social Security benefits by discrediting the claimant who maintains their request for benefits and decides to have a child while their disability application is pending. A person's ability or desire to become pregnant is completely irrelevant and should not be used by the ALJ to determine credibility (unless the claimant stopped working solely because of the pregnancy and not due to a disabling condition).")

Because the ALJ did not explain how giving birth related to the severity of plaintiff's impairments, and ALJs are not allowed to discredit a claimant for having children—unless the claimant's claimed disability related to giving birth—this rationale is not based on the proper legal standards or supported by substantial evidence.

In sum, the ALJ failed to provide clear and convincing reasons to discount plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. Therefore, the ALJ's decision is reversed on this issue.

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ did not properly evaluate the medical opinion of Alena Guggenheim, N.D. Pl. Br. 22–30, ECF 13.

### A.     Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, the ALJ must apply 20 C.F.R. § 404.1520c for Title II claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 82 Fed. Reg. 5844, *available at* 2017 WL

168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). Accordingly, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867–68; *see also* 20 C.F.R. §§ 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. (citing 20 C.F.R § 404.1520c(c)(2)).

ALJs must articulate how persuasive the medical opinions are and explain how the supportability and consistency factors are considered. 20 C.F.R. §§ 404.1520c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec.*

*Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)). Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

  **B.**  **Medical Opinion of Alena Guggenheim, N.D.**

  Dr. Guggenheim, a specialist in chronic pain and joint hypermobility disorders, began treating plaintiff in November 2018, and provided written medical opinions regarding plaintiff's physical conditions on April 7th, 2021, and July 10th, 2023. Tr. 2699–2705, 4752–53. Dr. Guggenheim described plaintiff's diagnoses as "hypermobile Ehlers-Danlos Syndrome and postural orthostatic tachycardia syndrome." *Id*. Dr. Guggenheim opined plaintiff "is limited in her ability to sit, stand, walk, lift, carry, bend, twist, use her arms to reach, push, pull, and use her hands for gross, fine, and repetitive manipulations." Tr. 2700. Dr. Guggenheim explained how these conditions "wax and wane in severity" and how due to these conditions, plaintiff could sit for about two hours in an eight-hour workday, stand and/or walk for less than two hours in an eight-hour workday, and "would be expected to miss work more than 4 days per month." Tr. 2700, 2704–05. The ALJ determined "these limitations by themselves preclude fulltime work activity." Tr. 24.

13 – OPINION AND ORDER

The ALJ found Dr. Guggenheim's opinions unpersuasive because "they are not consistent with the record," specifically, they differed from the opinions of the state agency consultants, Dr. Guggenheim did not treat plaintiff during the relevant dates, and Dr. Guggenheim provided different dates for when plaintiff could last work. Tr. 24. The ALJ failed to apply the proper legal standards supported by substantial evidence.

First, the ALJ found Dr. Guggenheim's opinions inconsistent with the record because Dr. Guggenheim opined plaintiff suffered severe limitations—likely to miss over four days per month, could sit about two hours in a workday, and could stand and/or walk for less than two hours in a workday—while the state agency consultants opined plaintiff could perform light work.[4] Tr. 24, 2704–05, 61, 69. "[T]he existence of a contradiction among medical opinions alone cannot constitute substantial evidence for discounting a treating physician's opinion." *Kovach v. Berryhill*, No. 18cv1848-GPC (MSB), 2019 WL 2995824, at *9 (S.D. Cal., July 9, 2019); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006) (finding the conclusory medical opinion of a state agency reviewing physician is sufficient to establish conflict among medical opinions but is not itself substantial evidence sufficient to reject the conflicting medical opinion outright). Thus, the inconsistencies between Dr. Guggenheim's opinions and the opinions of the state agency consultants do not constitute substantial evidence.

Second, the ALJ found Dr. Guggenheim's opinions inconsistent because Dr. Guggenheim did not treat plaintiff during the relevant dates. Tr. 24. "It is well-established that rejecting a medical opinion because it was rendered retrospectively is not a legitimate basis."

---

[4] Light work is defined as requiring, in part, "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls" and is therefore incompatible with Dr. Guggenheim's limitations. 20 C.F.R. § 404.1567(b); Tr. 2704–05.

14 – OPINION AND ORDER

*Nadon v. Saul*, 851 F. App'x. 24, 27 (9th Cir. 2021); *see, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 832 & n.10 (9th Cir. 1995). Thus, the fact that Dr. Guggenheim did not treat plaintiff during the relevant dates, on its own, does not constitute a valid basis for determining the consistency of Dr. Guggenheim's opinions.

Third, the ALJ reasoned Dr. Guggenheim's opinions were inconsistent with the record because Dr. Guggenheim stated plaintiff "was last able to work part-time in 2014" in her 2021 function report but stated plaintiff's disorders "caused disability that has prevented even part time work since 2015" in her 2023 letter. Tr. 24, 2702, 4752. The ALJ must consider the medical record as a whole, rather than isolating a "specific quantum" of evidence to support the ALJ's conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (cherry-picking is improper) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205-08 (9th Cir. 2001)); *Garrison*, 759 F.3d at 1009 (the ALJ "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by identifying a specific quantum of supporting evidence") (citing *Lingenfelter*, 504 F.3d at 1035). Here, the ALJ focused on this one inconsistency without addressing the other evidence consistent with Dr. Guggenheim's opinions.[5] Tr. 24.

Although the court reviews the ALJ's decision under the deferential "substantial evidence" standard, it will not "scour the record" for reasons to uphold the decision. *Moon v.*

---

[5] Plaintiff consistently reported fatigue, joint pain, decreased muscle control, and partial dislocations to her providers. Tr. 748, 1397, 1418, 1453, 1501, 1505, 1960–61, 3538, 3545, 3568, 4488.

15 – OPINION AND ORDER

*Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). And the court "may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ's failure to properly articulate the supportability and consistency analysis frustrates meaningful judicial review and constitutes legal error. *Sylvester G. v. Saul*, Case No. 20cv2842-GJS, 2021 WL 2435816, at *5 (C.D. Cal. June 15, 2021) (finding legal error when the ALJ "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion") (citing *Garrison*, 759 F.3d at 1012–13); *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." (citation omitted)). This error is not harmless and requires reversal. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

**III.    Remedy**

When the court determines the Commissioner erred in deciding to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. See *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), as amended (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been

resolved." *Id*. (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison*, 759 F.3d at 1020). Even if these requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of benefits only in rare circumstances." *Treichler*, 775 F.3d at 1100 (simplified).

This is not one of those rare circumstances where remand for award of benefits is appropriate. Instead, the court remands the case for the ALJ to reassess plaintiff's subjective symptom testimony and Dr. Guggenheim's opinion, and to conduct additional further proceedings as necessary for rendering a decision regarding whether plaintiff is disabled or not.

## CONCLUSION

For the reasons given above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED July 7, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge